**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 18 2015

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

DEBORAH DUNKLIN TIPTON                                    PLAINTIFF

VS.                    CAUSE NO. *5:15cv392-Jm*

GEORGE H. DUNKLIN, JR., LESTER MCKINLEY,
GEORGEA GREAVES, MARY JENNINGS,
BLACK, INC., AND HATTIE BOONE BLACK
TESTAMENTARY GST EXEMPT TRUST                            DEFENDANTS

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, Deborah Dunklin Tipton by and through her

attorneys, and in support hereof would show unto the Court as follows:

### Parties

1.      The Plaintiff, Deborah Dunklin Tipton, is an adult resident citizen of

Memphis, Shelby County, Tennessee.   This case assigned to District Judge _____

and to Magistrate Judge _____

2.      The Defendant, George H. Dunklin, Jr., is an adult resident citizen of

Arkansas County, Arkansas, who may be served at 620 East 22nd Street, Suite 206,

Stuttgart, Arkansas.

3.      The Defendant, Lester McKinley, is an adult resident citizen of

Arkansas County, Arkansas, who may be served at his residence in DeWitt,

Arkansas.

4.      The Defendant, Georgea Greaves, is an adult resident citizen of

Greenville County, South Carolina, who may be served at 105 Pine Forest,

Greenville, South Carolina 29601.

1288326-v1

5.     The Defendant Mary Jennings is an adult resident citizen of Arkansas County, Arkansas, who may be served at her residence in DeWitt, Arkansas.

6.     The Defendant, Black, Inc., is an Arkansas corporation with principal offices in Arkansas County, Arkansas, which may be served by service upon its registered agent, Rick Duffield, 508 South Monroe Street, DeWitt, Arkansas 72042.

7.     The Defendant, Hattie Boone Black Testamentary GST Exempt Trust, is a trust created by the Last Will and Testament of Hattie Boone Black, who died testate a resident of Arkansas County, Arkansas, and whose will was admitted to probate in the Chancery Court of Arkansas County, Arkansas. The trust may be served c/o Black Inc, at 508 South Monroe, DeWitt, Arkansas 72042.

<u>**Jurisdiction**</u>

8.     This Court has jurisdiction of this action for declaratory relief pursuant to 28 U.S.C. §1331 and §2201 in that there is a complete diversity of citizenship between the Plaintiff and the Defendants and the amount in controversy herein including actual damages, attorneys' fees and costs, reasonably exceeds the sum of $75,000.00 and there exists a justiciable controversy between the Plaintiff Tipton and Defendant Dunklin as to their respective rights and obligations under a written contract as to which they are parties.  The remaining Defendants are also parties to the same contract whose rights might be affected by any interpretation of such document. Upon information and belief all Defendants other than the Defendant Dunklin are believed to be in agreement with Plaintiff's position as to the terms and the meaning of said contract but they are joined herein as necessary

2

parties though no justiciable conflict is believed to exist between Plaintiff and those Defendants.

## Facts

9.      Deborah Dunklin Tipton and George H. Dunklin, Jr. are sister and brother and were respectively the niece and nephew of the late Hattie Boone Black who died testate in Arkansas County, Arkansas.

10.      The Last Will and Testament of Hattie Boone Black established a Testamentary Trust, and Article III(b) of the decedent's Will designated and included Deborah Boone Dunklin Tipton, George H. Dunklin, Jr., Lester McKinley, Georgea Greaves, and Mary Jennings, as the Beneficiaries of the Trust.

11.      As a result of an Order Modifying Trust entered on August 7, 2000, by the Chancery Court of Arkansas County Arkansas, the Beneficiaries of said Trust, to wit the parties hereto, each received 5,160 shares of non-voting stock of Black, Inc., an Arkansas corporation.

12.      On or about the 12th day of December, 2000, a Stock Repurchase Agreement, (hereinafter "Agreement" or "SRA") was made and entered into by and among the Hattie Boone Black Testamentary GST Exempt Trust (hereinafter "Trust"), George H. Dunklin, Jr. (hereinafter "Dunklin"), Lester McKinley (hereinafter "McKinley"), Georgea Greaves (hereinafter "Greaves"), Deborah Tipton (hereinafter "Tipton"), Mary Jennings (hereinafter "Jennings"), and Black, Inc. an Arkansas Corporation (hereinafter "Corporation").  A copy of such Stock Repurchase Agreement is attached hereto as Exhibit "A" and incorporated by reference.  Article

3

1288326-v1

II of the Agreement provided for restrictions on any attempted voluntary transfer of

stock held by a Beneficiary.  Article 2.3 of the Agreement established exacting

procedures which would control in the event of an intended voluntary transfer of

Black, Inc. shares to a party other than a permitted transferee.  Article 2.3(a)

specifically governs an intended voluntary transfer by a Dunklin shareholder and

provides in pertinent part as follows:

2.3(a)(i)    First, for a period of sixty (60) days of receipt of such notice of
             intent to sell, any Dunklin Shareholders who are Lineal
             Descendants of the selling Shareholder shall have the option to
             purchase such Shares. Such option shall be in proportion to the
             Share ownership of such Lineal Descendants who desire to
             purchase unless the purchasing Lineal Descendants otherwise
             agree.

2.3(a)(ii)   Next, for a period of thirty (30) days following the expiration of
             the sixty (60) day period set forth in subparagraphs (i) above,
             the other Dunklin Shareholders shall have the option to
             purchase any Shares not purchased pursuant to subparagraph
             (i) above. Such purchase shall be in proportion to the Share
             ownership of such other Dunklin Shareholders who desire to
             purchase unless the other purchasing Dunklin Shareholders
             otherwise agree.

On or about October 27, 2015, George H. Dunklin, Jr., by hand delivery and

certified mail gave notice of his intention to sell his 5,160 non-voting shares of

Black, Inc. stock to an outside third party thereby triggering the provisions of

Article 2.3(a) of the Stock Repurchase Agreement.  In the aforesaid notice letter,

Dunklin further advised that his lineal descendants as provided for in Article

2.3(a)(i) of the Agreement, namely his three daughters, Hillary, Lauren and Meagan

had indicated in writing that they did not wish to purchase any of the shares proposed for sale by Dunklin.

13.     As provided by the provisions of Article 2.3(a)(ii) of the SRA, Dunklin had thereby offered the shares to the only remaining Dunklin shareholder, his sister Deborah Tipton, the Plaintiff herein, thereby affording to her the option to acquire his shares pursuant to the terms of the SRA. A copy of this notice letter of October 27, 2015, is attached hereto as Exhibit "B" and incorporated by reference.

14.     On November 9, 2015, Plaintiff Tipton, availing herself of her rights under the Agreement and exercising her option to purchase Defendant Dunklin's shares of Black, Inc. caused to be sent to the Defendant Dunklin a notice of her election to exercise her option in accordance with the terms of the SRA. A copy of this letter exercising option is attached hereto as Exhibit "C" and incorporated by reference.

## Controversy

15.     In response to Ms. Tipton's notice of her election to exercise her option under the SRA, Mr. Dunklin through counsel by letter dated November 17, 2015, advised Rick Duffield, President of Black, Inc. that Mr. Dunklin had taken the position that Ms. Tipton's attempt to exercise her pre-emptive rights under the terms of the SRA was not appropriate and that she had thereby failed to exercise her rights. Mr. Dunklin through counsel further stated that Ms. Tipton's pre-emptive rights election period extended only through November 26, 2015. A copy of that November 17, 2015 letter is attached hereto as Exhibit "D."

1288326-v1

16.     On November 19, 2015, Mr. Dunklin through counsel advised Ms. Tipton directly that Mr. Dunklin did not recognize Ms. Tipton's exercise letter of November 9, 2015 as an effective exercise of her pre-emptive rights and further advised her that November 28, 2016 [sic] was Ms. Tipton's last day to effectively exercise her rights under the SRA.  A copy of that November 19, 2015, letter is attached hereto as Exhibit "E."

17.     Mr. Dunklin's positions both as to the window of opportunity for Ms. Tipton to exercise her pre-emptive rights and as to the manner in which such election purportedly had to be made, arbitrarily and capriciously disregard the clear and unambiguous provisions of the SRA or contract entered into by the parties hereto.  Paragraph 2.3(a)(i) and (ii) of the SRA clearly provides that: First for a period of sixty days of receipt of such notice of intent to sell, the lineal descendants of the selling shareholder shall have the option to purchase such shares and; next for a period of thirty days following the expiration of the sixty day period set forth in paragraph (i) above, the other Dunklin shareholders, namely Deborah Tipton, shall have the option to purchase any shares not purchased pursuant to paragraph (i) above.

18.     Contrary to the position of Mr. Dunklin, Ms. Tipton clearly had ninety days from the date of her receipt of Mr. Dunklin's notice letter which went out on October 27, 2015 in which to act. Without regard to the date of receipt of such notice, Ms. Tipton's window to exercise her rights and option to purchase cannot expire prior to January 25, 2016.

6

19.     Paragraph 2.3(e) provides the simple mechanics for an effective acceptance of a shareholders offer to acquire his shares as follows:

(e)     <u>Acceptance of Offer</u>.  The shareholders may exercise their election to purchase by giving notice thereof to the transferor and to the Corporation.  The Corporation shall exercise its election to purchase by giving notice thereof to the transferor and to the other Shareholders.

Clearly, Ms. Tipton's letter dated November 9, 2015 complies with the requirements of paragraph 2.3(e) and is an effective exercise of her election to purchase the shares offered by Defendant Dunklin. The actual price to be paid will be determined by a selection to be made by her after an appraisal has determined fair market value.

20.     Further, with respect to the validity or effectiveness of Ms. Tipton's exercise of her peremptory rights and option to purchase, Paragraph 2.3(a)(v) provides "the purchase price under this Article 2.3(a) shall be that set forth in the notice pursuant to Article 2.3(d) or the fair market value of the shares as of the evaluation date, as selected by each purchaser." Again, contrary to the position taken by Defendant Dunklin the ultimate purchase price is to be determined by the purchaser's selection from either the amount stated in the notice pursuant to Article 2.3(d) or the fair market value of the shares as of the evaluation date. Obviously the prospective purchaser is entitled to have the fair market value determined by appraisal as provided in Paragraph 1.1(b) of the SRA before she is required to make a selection as to the price she will pay in order to implement the purchase of the shares she has exercised her option to acquire.

7

21.    Finally, Article 1 Paragraph 1.1(b) of the SRA provides the agreed method for determining the fair market value of the shares being offered.  In essence, if the selling shareholder and the purchasing shareholder are unable to unanimously agree upon the fair market value and are further unable to agree on a single appraiser, the selling shareholder's selected appraiser and the purchaser's selected appraiser shall select a third appraiser to conduct the fair market value determination.

22.    Ms. Tipton's option exercise letter of November 9, 2015, first requested that Mr. Dunklin cooperate in order to set in motion the specified appraisal process, and on November 19, 2015, a second letter addressed to the Honorable Perry L. Wilson, counsel for George H. Dunklin, Jr., requested Mr. Dunklin's nomination of an appraiser to participate in the appointment of a third party appraiser.  A copy of that November 19, 2015 letter is attached as Exhibit "F.".  Following the written requests for cooperation by Mr. Dunklin in the selection of an appraiser, and subsequent phone calls Mr.  Dunklin apparently agreed to the designation of Stout/Risius/Ross as the appraiser to perform the appraisal process dictated in Article 1.1(b), and on November 30, 2015, a joint contact was made by attorneys for Mr. Dunklin and Ms. Tipton to retain such firm.

23.    Notwithstanding Mr. Dunklin's apparent acquiescence in the appraisal process as demonstrated by his November 30, 2015 acceptance of Stout Risius Ross, Inc., Defendant Dunklin, on November 30, 2015, caused to be sent yet another letter to the corporation and the McKinley heirs again disavowing the validity of the

8

Tipton election and asserting that her window to exercise her option had expired. A copy of that November 30, 2015 letter is attached hereto as Exhibit "G."

24.     Mr. Dunklin, through counsel, has further asserted the opinion that Article 6.2 of the SRA requires that the closing of any purchase under the agreement take place within 135 days of the event giving rise to such purchase and sale.  While the ultimate effect of the 135 day provision is also in dispute, time is obviously of the essence, and any refusal by the Defendant to fully cooperate with the appraisal proceedings will constitute not only a willful failure to cooperate but should also be viewed as an act of bad faith which should serve to void or otherwise nullify any provision requiring a closing within 135 days.

25.     On December 15, 2015, in an attempt to be certain that Mr. Dunklin had not abandoned his unsupportable positions, counsel for Ms. Tipton inquired directly of counsel for Ms. Dunklin as to whether Mr. Dunklin's agreement to appoint Stout Risius Ross, Inc. represented an abandonment of his previously stated positions.  Mr. Dunklin's counsel's response was that he reserved all of his previous positions. The December 18, 2015, letter confirming the December 15, 2015 conversation is attached hereto as Exhibit "H."

26.     Thus, an actual justiciable controversy within the jurisdiction of this Court continues to exist between Plaintiff Tipton and Defendant Dunklin as to the parties' respective rights and obligations under the SRA or contract in question.

27.     Plaintiff Deborah Dunklin Tipton is entitled to a declaratory judgment pursuant to 28 U.S.C. §2201 and §2202 interpreting the provisions of the subject

SRA as to the window of opportunity available to her to exercise her pre-emptive rights and option to purchase as well as the appropriate means to effectively exercise her election to purchase the shares proposed to be transferred by Defendant Dunklin.

28.     Article 12.1 of the SRA specifically affords to Plaintiff Tipton by reason of the failure of Defendant Dunklin to perform the obligations imposed upon him by the Agreement, all rights and remedies available including injunctive and equitable relief.

WHEREFORE, Plaintiff Deborah Dunklin Tipton prays that the Court: (1) declare her rights and the Defendant Dunklin's obligations under the Agreement; (2) issue an injunction preventing Defendant Dunklin from transferring any of his shares of Black, Inc. stock to any person other than Plaintiff Tipton during the pendency of this action; (3) to the extent Defendant Dunklin should refuse to cooperate in the appraisal process, require him to do so in timely fashion; (4) issue a mandatory injunction requiring Defendant Dunklin to convey his shares to Plaintiff Tipton immediately upon payment by her of the prices she selects or chooses as between that set forth in the notice or the fair market value of the shares as appraised; (5) award to Plaintiff Tipton all costs and expenses related to this litigation including all attorneys' fees, court costs and expenses incurred as same are afforded to her by the provisions of Article 12.2 of the SRA; and (6) afford Plaintiff Tipton such other relief in the premises as may be necessary and appropriate.

1288326-v1

Gordon S. Rather, Jr. (68054)
James M. Moody (64028)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Telephone: (501) 371-0808
Fax: (501) 376-9442
Email: grather@wlj.com
        jmoody@wlj.com

and

MERKEL & COCKE, P.A.
30 Delta Avenue
P.O. Box 1388
Clarksdale, MS 28614
Telephone: (662)627-9641
Fax: (662) 627-3592
Email: cmerkel@merkel-cocke.com

By: _____
     Charles M. Merkel, Jr. (MSB #2884)

1288326-v1

OCT-28-2015(WED) 11:12   BLACK INC   (FAX)8709968569   P.012

## STOCK REPURCHASE AGREEMENT

This Stock Repurchase Agreement ("Agreement"), made and entered into effective the 12th day of December, 2000, by and among the Hattie Boone Black Testamentary GST Exempt Trust (the "Trust"), George Dunklin, Jr. ("Dunklin"), Lester McKinley ("McKinley"), Georgea Greaves ("Greaves"), Deborah Tipton ("Tipton") and Mary Jennings ("Jennings") (the Trust, Dunklin, McKinley, Greaves, Tipton, Jennings and any future shareholder of the Corporation are hereinafter collectively referred to as the "Shareholders" and each singly as "Shareholder") and Black, Inc., an Arkansas corporation (hereinafter referred to as the "Corporation").

WITNESSETH:

WHEREAS, the Corporation is a corporation organized and in good standing under the laws of the State of Arkansas with its principal place of business in DeWitt, Arkansas; and

WHEREAS, the Trust owns 100 shares of voting stock of the Corporation and Dunklin, McKinley, Greaves, Tipton and Jennings each own Five Thousand One Hundred Sixty (5,160) shares of non-voting stock of the Corporation, which together comprise 100% of the issued and outstanding common stock of the Corporation; and

WHEREAS, the parties to this Agreement believe it is in their mutual best interest to provide for continuity and harmony in the management, policies and ownership of the Corporation;

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein, Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties to this agreement as follows:



EXHIBIT

A

## ARTICLE 1

### DEFINITIONS APPLICABLE TO THE ENTIRE AGREEMENT

1.1     Definitions.  For purposes of this Agreement, capitalized terms shall be defined as
follows:

(a)     "Dunklin Shareholder" shall mean Dunklin, Tipton, any Lineal Descendants
of Dunklin and Tipton, and the trustee of any trust for the sole benefit of the foregoing persons and/or
their spouses.

(b)     Except as set forth in Article 5.2, "Fair Market Value" shall be determined,
as of the Valuation Date, by mutual agreement of the selling Shareholder and the purchaser(s).  If the
selling Shareholder and the purchaser(s) are unable to unanimously agree upon the Fair Market
Value, Fair Market Value shall be determined by an appraiser selected jointly by the selling
Shareholder and the purchaser(s).  In the event the selling Shareholder and the purchaser(s) cannot
mutually agree on a single appraiser, the selling Shareholder's selected appraiser and the purchaser's
selected appraiser shall select a third appraiser to conduct the Fair Market Value determination.  The
cost of preparation of the appraisal shall be borne jointly by the selling Shareholder and the
purchaser(s).

(c)     "Lineal Descendant" shall mean the issue of a party hereto's body or a person
adopted  by a party hereto and in accordance with applicable state law.

(d)     "McKinley Shareholder" shall mean Jennings, Greaves, McKinley, any Lineal
Descendants of Jennings, Greaves and McKinley, and the trustee of any trust for the sole benefit of
the foregoing persons and/or their spouses.

(e)     "Permitted Transferee" shall mean Greaves, Jennings, McKinley, Tipton,

~2~

Dunklin, their Lineal Descendants, and any trust for the exclusive benefit of their spouses and/or their Lineal Descendants.

(f)   "Shares" shall mean the issued and outstanding shares of the Corporation as of the date hereof and such Shares shall individually be referred to as a "Share."

(g)   "Valuation Date" as used herein, shall be the last day of the month immediately preceding (i) the death of the deceased Shareholder, (ii) the date on which the remaining Shareholders and the Corporation each received the notice of the proposed transfer as provided in Article 2, or (iii) the date on which the remaining Shareholders and the Corporation received actual notice of a transfer of Shares under Article 2.

## ARTICLE 2

### RESTRICTIONS ON VOLUNTARY TRANSFERS

2.1.   General Restrictions.

(a)   A Shareholder may not transfer or encumber any of such Shareholder's Shares, whether now owned or hereafter acquired, or any right or interest in them, without the prior written consent of the Corporation and all of its Shareholders, except as otherwise specifically provided in this Agreement.   Any purported or attempted transfer of Shares in violation of the terms of this Agreement shall be void and not effective to transfer any interest in or title to any of such Shares to the purported transferee.

(b)   In addition to the other restrictions set forth in this Agreement, a Shareholder shall not transfer any interest in Shares, now owned or hereafter acquired, if the transfer would cause the Corporation's election as an S corporation to terminate.   A transfer in violation of this Article 2.1(b) shall be null and void.

-3-

2.2     Voluntary Transfers to a Permitted Transferee. A Shareholder may freely transfer any of such Shareholder's Shares to a Permitted Transferee without seeking prior approval of the Corporation or the other Shareholders, provided however, such Permitted Transferee must agree, in writing, to be bound by the terms and conditions of this Agreement and the share certificates evidencing such transfer shall bear a restrictive legend as provided herein.

2.3.     Voluntary Transfer to a Party Other Than a Permitted Transferee.

(a)     Dunklin Shareholder Voluntary Transfer. If during the Shareholder's lifetime, one of the Dunklin Shareholders desires to sell, transfer or otherwise dispose of any portion or all of such Shareholder's Shares, such Shareholder shall first offer to sell all of such Shareholder's Shares or such a portion thereof, as the case may be, as follows:

(i)     First, for a period of sixty (60) days of receipt of such notice of intent to sell, any Dunklin Shareholders who are Lineal Descendants of the selling Shareholder shall have the option to purchase such Shares. Such option shall be in proportion to the Share ownership of such Lineal Descendants who desire to purchase unless the purchasing Lineal Descendants otherwise agree.

(ii)     Next, for a period of thirty (30) days following the expiration of the sixty (60) day period set forth in subparagraph (i) above, the other Dunklin Shareholders shall have the option to purchase any Shares not purchased pursuant to subparagraph (i) above. Such purchase shall be in proportion to the Share ownership of such other Dunklin Shareholders who desire to purchase unless the other purchasing Dunklin Shareholders otherwise agree.

(iii)     Next, for a period of thirty (30) days following the expiration of the thirty (30) day period set forth in subparagraph (ii) above, the McKinley Shareholders shall have the option

—4—

to purchase any Shares not purchased pursuant to subparagraphs (i) and (ii) above. Such purchase shall be in proportion to the Share ownership of the McKinley Shareholders who desire to purchase unless the purchasing McKinley Shareholders otherwise agree.

(iv)  Lastly, for a period of fifteen (15) days following the expiration of the thirty (30) day period set forth in subparagraph (iii) above, the Corporation shall have the option to purchase any Shares not purchased pursuant to subparagraphs (i), (ii) and (iii) above.

(v)  The purchase price under this Article 2.3(a) shall be that set forth in the notice pursuant to Article 2.3(d) or the Fair Market Value of the Shares as of the Valuation Date, as selected by each purchaser. If all of the Shares offered by the selling Dunklin Shareholder are not purchased pursuant to this Article 2.3(a), none of the options set forth in this Article 2.3(a) shall be deemed to have been exercised.

(b)    McKinley Shareholder Voluntary Transfer. If during the Shareholder's lifetime, one of the McKinley Shareholders desires to sell, transfer or otherwise dispose of any portion or all of such Shareholder's Shares, such Shareholder shall first offer to sell all of such Shareholder's Shares or such a portion thereof, as the case may be, as follows:

(i)  First, for a period of sixty (60) days of receipt of such notice of intent to sell, any McKinley Shareholders who are Lineal Descendants of the selling Shareholder shall have the option to purchase such Shares. Such option shall be in proportion to the Share ownership of such Lineal Descendants who desire to purchase unless such purchasing Lineal Descendants otherwise agree.

(ii)  Next, for a period of thirty (30) days following the expiration of the sixty (60) day period set forth in subparagraph (i) above, the other McKinley Shareholders shall have the

-5-

option to purchase any Shares not purchased pursuant to subparagraph (i) above. Such purchase

shall be in proportion to the Share ownership of such other McKinley Shareholders who desire to

purchase unless such the other purchasing McKinley Shareholders otherwise agree.

(iii)   Next, for a period of thirty (30) days following the expiration of the thirty

(30) day period set forth in subparagraph (ii) above, the Dunklin Shareholders shall have the option

to purchase any Shares not purchased pursuant to subparagraphs (i) and (ii) above. Such purchase

shall be in proportion to the Share ownership of the Dunklin Shareholders who desire to purchase

unless the purchasing Dunklin Shareholders otherwise agree.

(iv)   Lastly, for a period of fifteen (15) days following the expiration of the

thirty (30) day period set forth in subparagraph (iii) above, the Corporation shall have the option to

purchase any Shares not purchased pursuant to subparagraphs (i), (ii) and (iii) above.

(v)   The purchase price this Article 2.3(b) shall be that set forth in the notice

pursuant to Article 2.3(d) or the Fair Market Value of the Shares as of the Valuation Date, as

selected by each purchaser. If all of the Shares offered by the selling McKinley Shareholder are not

purchased pursuant to this Article 2.3(b), none of the options set forth in this Article 2.3(b) shall be

deemed to have been exercised.

(c)   Trust Voluntary Transfer.

(i)   If during the existence of the Trust, the trustees acting on behalf of the Trust

elect to sell, transfer or otherwise dispose of a portion, but not all of such Trust's Shares, the trustees

shall grant an option to purchase that portion of Trust's Shares as follows:

(A)     First, for a period of thirty (30) days following the Shareholder(s)' receipt of such notice of intent to sell, the Shareholders shall have the option to purchase all of such Shares in proportion to their Share ownership.

(B)   Next, for a period of thirty (30) days following the expiration of the thirty (30) day period set forth in subparagraph (A) above, the other Dunklin Shareholders shall have the option to purchase any Shares that were not purchased by Dunklin Shareholder(s) pursuant to subparagraph (A) above, and the other McKinley Shareholders shall have the option to purchase any Shares that were not purchased by McKinley Shareholder(s) pursuant to subparagraph (A) above. Such purchase by Dunklin Shareholders shall be in proportion to the Share ownership of those Dunklin Shareholders who desire to purchase, unless such purchasing Dunklin Shareholders otherwise agree, and such purchase by McKinley Shareholders shall be in proportion to the Share ownership of those McKinley Shareholders who desire to purchase unless such purchasing McKinley Shareholders otherwise agree.

(C)   Next, for a period of thirty (30) days following the expiration of the thirty (30) day period set forth in subparagraph (B) above, the other Shareholders, except for Shareholders who failed to exercise any option available to them under subparagraphs (A) or (B) above, shall have the option to purchase any Shares that were not purchased pursuant to subparagraphs (A) and (B) above. Such purchase shall be in proportion to the Share ownership of those Shareholders who desire to purchase unless the purchasing Shareholders otherwise agree.

(D)   Lastly, for a period of fifteen (15) days following the expiration of the thirty (30) day period set forth in subparagraph (C) above, the Corporation shall have the option to purchase any Shares that were not purchased pursuant to subparagraphs (A), (B) and (C) above.

-7-

(E)   The purchase price under this Article 2.3(c)(i) shall be that set forth in the notice pursuant to Article 2.3(d).  If all of the Shares offered by the trustees are not purchased pursuant to this Article 2.3(c)(i), none of the options set forth in this Article 2.3(c)(i) shall be deemed to have been exercised.

(ii)     If during the existence of the Trust, the trustees acting on behalf of the trust elect to sell, transfer or otherwise dispose of all of such Trust's Shares, the trustee shall first grant an option to purchase all of the Trust's Shares to the other Shareholder(s) in accordance with the options set forth in subparagraphs 2.3(c)(ii)(A), (B) and (C) above. The purchase price under this Article 2.3(c)(ii) shall be that set forth in the notice pursuant to Article 2.3(d).  If all of the Shares offered by the trustees are not purchased pursuant to this Article 2.3(c)(ii), none of the options set forth in this Article 2.3(c)(ii) shall be deemed to have been exercised.

(d)     Notice of Transfer.  When a Shareholder intends to transfer his Shares, he shall give written notice to the Corporation and the remaining Shareholders of such Shareholder's intention.  The notice, in addition to stating that the Shareholder is transferring Shares, shall state (i) the number of Shares to be transferred, (ii) the name and address of the proposed transferee, (iii) whether or not the transfer is for a valuable consideration and, if so, the proposed purchase price and other terms of sale.  Only cash sales, and not installment sales, shall trigger the options set forth in Article 2.3.  Installments sales shall be considered a violation of the terms of this Agreement under Article 2.1(a).

(e)     Acceptance of Offer.  The Shareholders may exercise their election to purchase by giving notice thereof to the transferor and to the Corporation.  The Corporation shall exercise its election to purchase by giving notice thereof to the transferor and to the other Shareholders.

–8–

(f)    Death Prior to Closing. If a Shareholder who proposes to transfer Shares dies prior to the closing of the sale and purchase contemplated by this Article, his Shares shall be the subject of sale and purchase under Article 3.

(g)    Violation of Agreement. If a voluntary transfer is not upon the terms or is not to the transferee stated in the notice required of the transferring Shareholder by this Article, or is not completed within sixty (60) days of the lapse of all options granted in this Article, such transfer shall be void. If the transferor, after the transfer, reacquires all or any portion of the transferred Shares, the Shares shall be subject to this Agreement as if no transfer had been made.

## ARTICLE 3

## PURCHASE UPON DEATH

3.1    Upon Death. Upon a Shareholder's death, the Shares then owned by such Shareholder may be permissibly transferred to a Permitted Transferee. However, should a Shareholder's death cause such Shareholder's Shares to be transferred to someone other than a Permitted Transferee, then the options granted pursuant to Article 2.3(a) or 2.3(b) , as applicable, shall become exercisable with the purchase price being computed pursuant to Article 5 of this Agreement. The successor to the deceased Shareholder shall  promptly transfer title to the party successfully exercising the option granted herein, if any party opts to so exercise. It is the intent and purpose of this Agreement that upon the death of a Shareholder, and subject to the payment of the purchase price as herein provided, the surviving Shareholders may continue the business of the Corporation.

## ARTICLE 4

## INVOLUNTARY TRANSFERS

4.1     Involuntary Transfer.  If other than by reason of a Shareholder's death, Shares are transferred by operation of law or pursuant to court order to any person other than the Corporation (such as, but not limited to, a Shareholder's trustee in bankruptcy, a Shareholder's spouse upon divorce, a purchase at any creditor's or court sale), then such Shareholder shall be treated as though such Shareholder was transferring the Shares under Article 2 and the options as set forth in Articles 2.3(a), 2.3(b) and 2.3(c), as applicable, may be exercised and upon the same terms as provided in this Article 2.3, with respect to Shares proposed to be transferred, except that the purchase price for such Shares shall be One Dollar and No/100 ($1.00) per share.

## ARTICLE 5

## PURCHASE PRICE

5.1     Purchase Price.  Except as otherwise expressly set forth herein, the purchase price for the Shares owned by the transferor shall be determined in accordance with this Article.  Except as provided in Article 5.2 , the price of the Shares to be purchased shall be the Fair Market Value of the Shares on the Valuation Date.

5.2     Shareholders' Determination.  Article 5.1 notwithstanding, the Shareholders and the Corporation may, at any time and from time to time, substitute a purchase price for that determined above by executing and filing with the Corporation a written instrument where such determination is set forth.  For the period of time stated in the instrument, the purchase price so determined shall supersede Fair Market Value, as defined herein.  Such written instrument may, but need not, read as follows:

-10-

"DETERMINATION OF FAIR MARKET VALUE"

The undersigned, being all the parties to that certain Stock Purchase Agreement, dated December 12, 2000, do hereby, pursuant to Article 5.3 of said Agreement, agree that between ___ ___, 20__, and _____, 20__, both dates inclusive, the Fair Market Value of each share of Black, Inc. shall be an amount equal to $_____."

An alternative form is as follows:

"DETERMINATION OF FAIR MARKET VALUE"

The undersigned, being all the parties to that certain Stock Purchase Agreement dated December 12, 2000, do hereby, pursuant to Article 5.3 of said Agreement, agree that after _____ , 20__, the Fair Market Value of each share of Black, Inc. shall be an amount equal to $_____. Such amount shall be effective until a determination of a different amount is signed by all of the parties.

## ARTICLE 6

### PAYMENT OF PURCHASE PRICE

6.1     Terms. If a Shareholder's Shares are purchased pursuant to the provisions of Article 3 or Article 4, the purchase price shall be paid in cash or certified check drawn on an Arkansas chartered state bank or a nationally chartered bank located in Arkansas at closing.

6.2     Closing.  The closing of any purchase under this Agreement shall take place at the offices of the Corporation within one hundred thirty five (135) days of the event giving rise to such purchase and sale.  At the closing, the selling Shareholder or his personal representative shall cause to be delivered to the purchasing Shareholder(s) or to the Corporation, as the case may be, certificates representing all of the Shares to be purchased, duly endorsed, free and clear of all liens, claims

-11-

or encumbrances, with evidence of payment of all transfer taxes and fees, if any.  The purchasing

Shareholder(s) or the Corporation, as the case may be, shall deliver to the selling Shareholder or his

personal representative the payment as provided in Article 5.  In connection with the closing, the

Shareholders and the Corporation and their personal representatives, if any, shall do all things

necessary and appropriate to accomplish the purchase and sale.

     6.3     Escrow of Shares.  All of the Shareholders agree that the share certificates evidencing

their ownership of the Shares shall be deposited with the Corporation as escrowee of such Shares and

to assure compliance with this Agreement.

## ARTICLE 7

## TRANSFER IN VIOLATION OF THIS AGREEMENT

     7.1     Prohibition Against Transfer in Violation.  The Shareholders may not, either singly

or collectively, under any circumstances sell or transfer their Shares other than in accordance with

the terms of this Agreement, nor may they pledge, assign or otherwise encumber their Shares therein.

     7.2     Void Transfer.  In the event any Shareholder sells, assigns, transfers, gives, pledges,

encumbers or otherwise disposes of or grants a security interest in any Shares owned by him

otherwise than in strict accordance with the terms of this Agreement, such a transfer, assignment or

encumbrance shall be void.

## ARTICLE 8

## FUTURE SHAREHOLDERS AND ADDITIONAL SHARE PURCHASE

     8.1     Future Shareholders.  It is understood and agreed that the provisions of this

Agreement shall control the Shares owned by the Shareholders and that future shareholders of the

Corporation acquiring Shares through the Shareholders or the Corporation shall be required to join

in and agree to be bound by this Agreement as a condition of their becoming Shareholders. The provisions of this Agreement shall also apply to all Shares now owned or hereafter acquired by the Shareholders.

8.2    Restrictive Legend.    Each certificate representing the Shares now and hereafter held by the Shareholders shall be stamped with a legend in substantially the following form:

> The transfer of the shares of stock represented by the within certificate is restricted under the terms of an agreement dated December 12, 2000, by and among the Corporation, the Hattie Boone Black Testamentary GST Exempt Trust, George Dunklin, Jr., Lester McKinley, Georgea Greaves, Deborah Tipton and Mary Jennings, a copy of which is on file at the office of the Corporation. No transfer of any share represented by this certificate shall be valid unless made in accordance with such agreement.

## ARTICLE 9

### AMENDMENT AND TERMINATION

9.1    Termination.  This Agreement may be altered, amended or terminated at any time only by a written instrument executed by all of the parties hereto.  This Agreement shall terminate upon the occurrence of any of the following events:

(a)  the bankruptcy, receivership or dissolution of the Corporation; or

(b)  upon a single shareholder holding all of the issued Shares.

9.2    Obligations Survive Termination.  The termination of this Agreement as herein provided shall have no effect on any obligation of the parties which arose pursuant to the purchase of Shares under this Agreement prior to its termination under this Article.

## ARTICLE 10

### NOTICES AND OTHER COMMUNICATIONS

10.1    Any notice, offer, acceptance of an offer, or other communication provided for or

required by this Agreement shall be in writing and shall be deemed to have been given when delivered

by hand or when deposited in the United States mail, and sent by prepaid, first class, certified or

registered air mail, return receipt requested, addressed to the party to whom such notice or other

communication is intended to be given.

(a)    If to the Corporation:

Black, Inc.
508 South Monroe
DeWitt, AR 72042

(b)    If to the Trust:

Hattie Boone Black Testamentary GST Exempt Trust
c/o Black, Inc.
508 South Monroe
DeWitt, AR 72042

and

Mr. William C. Bridgforth
Ramsey, Bridgforth, Harrelson & Starling, LLP
P. O. Box 8509
Pine Bluff, AR 71611-8509

(c)    If to Dunklin:

George Dunklin, Jr.
P. O. Box 586
DeWitt, AR 72042

(d)    If to McKinley:

        Lester McKinley
        P. O. Box 446
        DeWitt, AR 72042

(e)    If to Greaves:

        Georgea Greaves
        105 Pine Forest
        Greenville, SC 29601

(f)    If to Tipton:

        Deborah Tipton
        382 Ripplebrook
        Memphis, TN 38120

(g)    If to Jennings:

        Mary Jennings
        P. O. Box 629
        DeWitt, AR 72042

and in the case of any other party, shall be such address as such other party may have previously furnished in writing to the Corporation or such other party's last known address.

## ARTICLE 11

## REPRESENTATIONS AND WARRANTIES

11.1    <u>Ownership of Shares</u>. Each Shareholder hereby represents and warrants that such Shareholder owns the Shares, as set forth herein, free and clear of all liens, restrictions, pledges and encumbrances, that such Shareholder has made no disposition of such Shares which has not been

-15-

recorded on the books and records of the Corporation, and that such Shareholder has granted no proxy rights or other voting rights with respect to such Shares.

## ARTICLE 12

## GENERAL PROVISIONS

12.1   Enforceability.  The parties hereto do hereby recognize and acknowledge that it is impossible to measure in money the damages which would result to a party or to a personal representative of a deceased party by reason of a failure of any of the parties to perform any obligations imposed upon a party under this Agreement.  Therefore, each party to this Agreement shall have any and all remedies which are available to a party hereto for the violation of any of the terms of this Agreement, including, but not limited to, injunctive and other equitable relief.  The existence of this right shall not preclude any other rights at law or in equity which a party may have.

12.2   Attorneys' Fees.  If the parties litigate any provision of this Agreement or the subject matter of this Agreement, the unsuccessful litigant will pay to the successful litigant(s) all costs and expenses including all attorneys' fees, expenses and court costs incurred by the successful litigant at trial and on any appeal.

12.3   Binding Effect.  This Agreement inures to the benefit of the Corporation, its successors and assigns and to the Shareholders and their respective heirs, personal representatives, successors and assigns.

12.4   Prior Agreements.  This Agreement supersedes all prior written and oral agreements between the parties regarding the purchase of the Shares.

12.5   Partial Invalidity and Severability.  All rights, restrictions and obligations contained herein may be exercised and shall be applicable and binding to the extent that they do not violate any

-16-

applicable laws and are intended to be limited to the extent necessary to render this Agreement legal, valid and enforceable. If any terms of this Agreement shall be held illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the parties that the remaining terms hereof shall constitute their agreement with respect to the subject matter hereof and all such remaining terms shall remain in full force and effect.

12.6    Headings. Headings as to the contents of particular articles and paragraphs in this Agreement are inserted only for convenience and shall not be construed as part of this Agreement or as a limitation on the scope or provisions in this Agreement.

12.7    Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall be one and the same instrument.

12.8    Governing Law Forum. The validity and effect of this Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas.

12.9    Conflict of Interest. Each of the parties to this Agreement hereby acknowledges that Mitchell, Williams, Selig, Gates & Woodyard, A Professional Limited Company, prepared this Agreement on behalf of and in the course of representing the parties below as directed by all of these parties. Each party further acknowledges and agrees to the following:

(a)    He has been advised by Mitchell, Williams, Selig, Gates & Woodyard, A Professional Limited Company of the conflict that may exist between his individual interests and those of the other parties;

(b)    He has been advised by Mitchell, Williams, Selig, Gates & Woodyard, A Professional Limited Company, to seek advice of independent counsel and has had the opportunity to seek such advice.

-17-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of

the date and year first above written.

ATTEST:                                           Black, Inc.

By: _____                     By: _____
Name: Warren A. Jennings Jr.                       Name: _Kirk Duffield_
Title: _Secty_                                     Title: _President_


**SHAREHOLDERS:**

**Hattie Boone Black Testamentary**
**GST Exempt Trust, Shareholder**

By:
_____                         _____
George Dunklin, Jr., Trustee                       George Dunklin, Jr., Shareholder

_____                         _____
Lester McKinley, Trustee                           Lester McKinley, Shareholder

_____                         _____
Georgea Greaves, Trustee                           Georgea Greaves, Shareholder

_____                         _____
Warren Jennings, Jr., Trustee                      Deborah Tipton, Shareholder

_____                         _____
William C. Bridgforth, Trustee                     Mary Jennings, Shareholder

H:\tax\ubauman\black_hattieboone\stockholders_agmt.wpd

-18-

**GEORGE H. DUNKLIN, JR.**
620 E. 22ND Street
Suite 206
**STUTTGART, ARKANSAS 72160**

October 27, 2015

**PERSONAL SERVICE / HAND DELIVERY**

Black, Inc.
508 S. Monroe
DeWitt, AR 72042

Hattie Boone Black Testamentary GST Exempt Trust
C/o Black, Inc.
508 S. Monroe
DeWitt, AR 72042

**VIA CERTIFIED MAIL / RETURN RECEIPT REQUESTED**

William C. Bridgforth
Ramsey, Bridgforth, Harrelson & Starling, LLP
P.O. Box 8509
Pine Bluff, AR 71611-8509

Lester McKinley
P.O. Box 446
DeWitt, AR 72042

Georgea Greaves
105 Pine Forest
Greenville, S.C. 29601

Deborah Tipton
382 Ripplebrook
Memphis, TN 38120

Mary Jennings
P.O. Box 629
DeWitt, AR 72042

Hillary A. Dunklin
1854 Hwy 152
Humphrey, AR 72073

Page 1 of 3

EXHIBIT

B

Lauren P. Dunklin
1854 Hwy 152
Humphrey, AR 72073

Margaret E. Dunklin
1854 Hwy 152
Humphrey, AR 72073

> Re:   Notice of Intent of George H. Dunklin, Jr. to Transfer Shares of Black, Inc.
> Pursuant to Shareholder Repurchase Agreement Dated December 12, 2000

All:

Please accept this letter as my notice to you, pursuant to the terms of the Stock Repurchase Agreement dated December 12, 2000 (hereinafter "SRA"), of my intent to transfer my 5,160 non-voting shares of Black, Inc.

I received an offer dated October 21, 2015, from Rebecca Winemiller and Jerry Lee Bogard, both having an address of 517 South Main Street, Suite A, Stuttgart, Arkansas 72160, to purchase my 5,160 non-voting shares of Black, Inc. (hereinafter "GHD Shares") for Twenty Million Dollars and 00/100 ($20,000,000.00) in cash. A copy of the offer dated October 21, 2015, that I received from Rebecca Winemiller and Jerry Lee Bogard is attached hereto.

Pursuant to Article 2.3(i) of the SRA, my Lineal Descendants, as that term is defined in the SRA, have the first option to purchase the GHD Shares. My Lineal Descendants are my daughters, Hillary, Lauren and Megan. I have offered the GHD Shares to each of my daughters, and each them has indicated that they do not wish to purchase any of the GHD Shares. I have attached letters addressed to Black, Inc. from each of them confirming that this is the case.

Pursuant to Article 2.3(ii) of the SRA, the GHD Shares are to be offered next to the other Dunklin Shareholders, as that term is defined in the SRA. The only remaining Dunklin Shareholder is my sister, Deborah Tipton. This letter constitutes my notice and offer to sell the GHD Shares to Deborah Tipton pursuant to the terms of the SRA.

In the event that Deborah Tipton does not elect to purchase the GHD Shares in accordance with the terms of the SRA, then, pursuant to Article 2.3(iii) of the SRA, the GHD Shares are to be offered next to the McKinley Shareholders, as that term is defined in the SRA. The McKinley Shareholders are Mary Jennings, Georgea Graves and Lester McKinley. This letter constitutes my notice and offer to sell the GHD Shares to Mary Jennings, Georgea Graves and Lester McKinley pursuant to the terms of the SRA in the event that Deborah Tipton does not elect to purchase the GHD Shares in accordance with the terms of the SRA.

In the event that neither Deborah Tipton, Mary Jennings, Georgea Graves nor Lester McKinley elect to purchase the GHD Shares in accordance with the terms of the SRA, then, pursuant to Article 2.3(iv) of the SRA, the GHD Shares are to be offered to the Corporation, as that term is defined by the SRA. The Corporation is Black, Inc. This letter constitutes my notice

and offer to sell the GHD Shares to Black, Inc. pursuant to the terms of the SRA in the event that Deborah Tipton, Mary Jennings, Georgea Graves and Lester McKinley do not elect to purchase the GHD Shares in accordance with the terms of the SRA.

In the event that Deborah Tipton, Mary Jennings, Georgea Graves, Lester McKinley and Black, Inc. do not elect to purchase the GHD Shares in accordance with the terms of the SRA, then it is my intent to sell the GHD Shares to Rebecca Winemiller and Jerry Lee Bogard for Twenty Million Dollars and 00/100 ($20,000,000.00) in accordance with the terms of the SRA.

Sincerely,

George H. Dunklin, Jr.

Encl.

# OFFER TO PURCHASE
## ALL OF GEORGE H. DUNKLIN, JR.'S SHARES OF STOCK
## IN BLACK, INC.

October 21, 2015

To George H. Dunklin, Jr.:

Rebecca Winemiller and Jerry Lee Bogard (collectively "Buyer") hereby offer to purchase from you, George H. Dunklin, Jr. ("Seller"), the Five Thousand One Hundred Sixty (5,160) non-voting shares of capital stock (the "Shares") of Black, Inc. (the "Company") owned by Seller for Twenty Million Dollars and no/100 ($20,000,000.00) in cash ("Base Purchase Price") pursuant to the terms and conditions stated herein.

We understand that others have preemptive rights pursuant to an existing Stock Repurchase Agreement, dated December 12, 2000, to purchase the Shares if they so desire, and we understand that you are unable to accept our offer until the preemptive rights described above have completely lapsed. This offer is conditioned upon Buyer's understanding that Seller's only restriction in transferring free and clear title to the Shares is the existence of the preemptive rights described above.

Buyer and Seller acknowledge that time is of the essence regarding this offer, and this offer will be withdrawn if you do not accept it within five (5) business days following the complete lapse of the preemptive rights described above.

In the event that you accept this offer by signing your acceptance in the space provided below, Buyer will have fifteen (15) days from the date of your acceptance within which to complete to its satisfaction an investigation of the Company, its subsidiaries and any other entities in which the Company owns an interest, including, but not limited to, an examination of all financial and corporate books and records, properties, contracts and all other documents and data of the Company, its subsidiaries and any other entities in which the Company owns an interest ("Due Diligence"). Notwithstanding the foregoing, Buyer shall be under no obligation to tender all or part of the Adjusted Purchase Price (as defined below) to Seller until Buyer has completed the Due Diligence. Buyer expects Seller, and Seller has agreed to provide Buyer with any pertinent information regarding the Company that Seller is able to provide in his capacity as a minority shareholder of the Company prior to Seller's acceptance of this offer.

Upon completion of Buyer's Due Diligence, Buyer and Seller shall mutually agree upon any adjustments to the Base Purchase Price, whether by increase or decrease, necessitated by actions taken by the Company outside the normal course of business following the date of this offer which constitute: stripping of assets, liquidation of assets, distribution of assets, depletion of assets, assumption or incurring of liabilities, assumption of a contract and/or lack of maintenance, upkeep or replacement costs associated with a going concern. The Base Purchase Price is based upon Buyer's perceived value of the approximately 26,000 acres of real property and other business assets owned by the Company as of the date of this offer, and Buyer and Seller mutually agree that the Base Purchase Price will be adjusted, if necessary, to reflect any

Page 1 of 2

increase or decrease of such assets of the Company that might occur between the date of this offer and the date that the Shares are formally transferred from Seller to Buyer. ("Adjusted Base Price").

Upon the lapsing of the aforementioned preemptive rights and formal acceptance of this offer by Seller, and upon the satisfaction of the applicable terms and conditions stated above, Buyer and Seller shall formalize the transfer of the Shares to Buyer, and Buyer shall tender the full Adjusted Base Price, in cash, to Seller at the closing of the transaction, which is anticipated to occur no later than 5:00 p.m. CST, Friday, January 8, 2016.

Modification. This offer may only be amended, supplemented or otherwise modified by a writing executed by all parties hereto.

Governing Law. All matters relating to or arising out of the transaction contemplated this offer and the rights of the parties (sounding in contract, tort, or otherwise) will be governed by and construed and interpreted under the laws of the State of Arkansas, without regard to conflicts of law principles that would require the application of any other law.

Counterparts. This offer may be executed in one or more counterparts, each of which will be deemed to be an original copy, and all of which, when taken together, will be deemed to constitute one and the same document, and will be effective when counterparts have been signed by each of the parties and delivered to the other parties. A manual signature on this letter whose image shall have been transmitted electronically will constitute an original signature for all purposes. The delivery of copies of this letter, including executed signature pages, by electronic transmission will constitute effective delivery of this letter for all purposes.

If you are in agreement with the foregoing and accept this offer, please sign, date and return one copy of this letter, which thereupon will constitute our understanding with respect to its subject matter and a binding agreement.

**BUYER:**

Rebecca Winemiller

_____
Jerry Lee Bogard

**Agreed and accepted on ____ / ____ /2015.**
**SELLER:**

_____
George H. Dunklin, Jr.

increase or decrease of such assets of the Company that might occur between the date of this offer and the date that the Shares are formally transferred from Seller to Buyer. ("Adjusted Base Price").

Upon the lapsing of the aforementioned preemptive rights and formal acceptance of this offer by Seller, and upon the satisfaction of the applicable terms and conditions stated above, Buyer and Seller shall formalize the transfer of the Shares to Buyer, and Buyer shall tender the full Adjusted Base Price, in cash, to Seller at the closing of the transaction, which is anticipated to occur no later than 5:00 p.m. CST, Friday, January 8, 2016.

Modification. This offer may only be amended, supplemented or otherwise modified by a writing executed by all parties hereto.

Governing Law. All matters relating to or arising out of the transaction contemplated this offer and the rights of the parties (sounding in contract, tort, or otherwise) will be governed by and construed and interpreted under the laws of the State of Arkansas, without regard to conflicts of law principles that would require the application of any other law.

Counterparts. This offer may be executed in one or more counterparts, each of which will be deemed to be an original copy, and all of which, when taken together, will be deemed to constitute one and the same document, and will be effective when counterparts have been signed by each of the parties and delivered to the other parties. A manual signature on this letter whose image shall have been transmitted electronically will constitute an original signature for all purposes. The delivery of copies of this letter, including executed signature pages, by electronic transmission will constitute effective delivery of this letter for all purposes.

If you are in agreement with the foregoing and accept this offer, please sign, date and return one copy of this letter, which thereupon will constitute our understanding with respect to its subject matter and a binding agreement.

BUYER:

_____
RebeccaWinemiller

_____
Jerry Lee Bogard

Agreed and accepted on ____ / ____/2015.
SELLER:

_____
George H. Dunklin, Jr.

HILLARY A. DUNKLIN
1854 Hwy 152
Humphrey, AR 72073


October 26, 2015


Black, Inc.
508 S. Monroe
DeWitt, AR 72042


Re:   Notice of intent to decline right to purchase Shares of Black, Inc.

Dear Sir/Madame:

Please accept this letter as my notice to Black, Inc. that pursuant to the terms of the Stock Repurchase Agreement dated December 30, 2008, I am declining my right to purchase any of the shares of Black, Inc. owned by my father George H. Dunklin, Jr., which I have the right to purchase.

Please let me know if you require any further information from me.


Sincerely,


Hillary A. Dunklin

LAUREN P. DUNKLIN
1854 Hwy 152
Humphrey, AR 72073

October 26, 2015

Black, Inc.
508 S. Monroe
DeWitt, AR 72042

Re:     Notice of intent to decline right to purchase Shares of Black, Inc.

Dear Sir/Madame:

Please accept this letter as my notice to Black, Inc. that, pursuant to the terms of the Stock Repurchase Agreement dated December 12, 2000, I am declining my right to purchase any of the shares of Black, Inc. owned by my father, George H. Dunklin, Jr., which I have the right to purchase.

Please let me know if you require any further information from me.

Sincerely,

Lauren P. Dunklin

MARGARET E. DUNKLIN
1854 Hwy 152
Humphrey, AR 72073


October 26, 2015


Black, Inc.
508 S. Monroe
DeWitt, AR 72042


Re:    Notice of intent to decline right to purchase Shares of Black, Inc.

Dear Sir/Madame:

Please accept this letter as my notice to Black, Inc. that, pursuant to the terms of the
Stock Repurchase Agreement dated December 12, 2000, I am declining my right to purchase any
of the shares of Black, Inc. owned by my father, George H. Dunklin, Jr., which I have the right to
purchase.

Please let me know if you require any further information from me.


Sincerely,

Margaret E. Dunklin



CHARLES M. MERKEL
JOHN H. COCKE*
CYNTHIA I. MITCHELL
CORRIE J. SCHULER
EDWARD (TED) P. CONNELL, JR.*
CHARLES M. MERKEL III
*ALSO LICENSED IN TN

# MERKEL & COCKE

A PROFESSIONAL ASSOCIATION

ATTORNEYS AT LAW

30 DELTA AVENUE

POST OFFICE BOX 1388

CLARKSDALE, MISSISSIPPI 38614-1388

662-627-9641
FAX # 662-627-3592
WWW.MERKEL-COCKE.COM

Charles M. Merkel, Jr
cmerkel@merkel-cocke.com

November 9, 2015

George H. Dunklin, Jr.
620 East 22nd Street, Suite 206
Stuttgart, AR 72160

      RE:    Notice of Intent of George H. Dunklin, Jr. to Transfer Shares
            of Black, Inc. Pursuant to Shareholder Repurchase Agreement
            Dated December 12, 2006

Dear Mr. Dunklin:

      By letter dated October 27, 2015, you have tendered notice pursuant to the terms of the Stock Repurchase Agreement dated December 12, 2000, (hereinafter "SRA"), of your intent to transfer your entire block of 5,160 non-voting shares of Black, Inc. Pursuant to Article 2 of the SRA, your notice of intent to transfer has operated to extend a series of offers or options to purchase your 5,160 non-voting shares of Black, Inc.

      Your lineal decedents having declined to exercise their option with respect to the GHD shares, under provisions of Article 2.3(ii) of the SRA, the 5,160 non-voting shares of Black, Inc. owned by George H. Dunklin, Jr. have now been offered to my client and your sister, Deborah Tipton.

      Pursuant to those rights granted her under the SRA, Deborah Tipton has elected to exercise her option in accordance with the terms of the SRA. Please accept this letter as her notice to you that she will exercise her option to purchase the entire block of shares offered by you pursuant to the terms of the SRA. By copy of this letter Black, Inc., the Hattie Boon Black Testamentary GST Exempt Trust, and the McKinley shareholders to-wit: Lester McKinley, Georgea Greaves, and Mary Jennings are all being served with notice of Deborah Tipton's election to exercise her option herein. In order to arrive at the purchase price Article 2.3(a) provides that at purchaser's option the price shall be either that set forth in the notice or the fair market value of the shares as of the October 27, 2015 valuation date.

      As you are of course aware, Article 1.1(b) provides that "fair market value" shall be determined as of the valuation date by mutual agreement of the selling shareholder and the purchaser. If the selling shareholder and the purchaser are unable to unanimously agree upon the fair market value, the fair market value shall be determined by an appraiser selected jointly by the selling shareholder and the purchaser. Additional provisions are provided in the event the selling shareholder and purchaser cannot mutually agree on a single appraiser.


EXHIBIT
C

George H. Dunklin, Jr.
November 9, 2015
Page 2

As you are further aware, the fair market value of Class B non-voting shares in Black, Inc. was last appraised on December 31, 2012. The previous appraisers being already familiar with the assets of Black, Inc., it would appear that they would be in a position to offer the quickest turnaround for updating an appraisal, and also the most cost effective means of obtaining such an appraisal. To that end, Deborah Tipton is agreeable to the same group of appraisers being retained to conduct an appraisal of share value as of October 27, 2015. If the collective group that provided the 2012 appraisal is acceptable to you, please advise and I will coordinate with counsel of your designation to retain them for that purpose. Please either let me know that this suggestion is agreeable, or have your counsel contact me to work out the details for obtaining the necessary appraisal.

Yours very truly,

MERKEL & COCKE, P.A.

Charles M. Merkel, Jr.

CMM/dp

cc:   Deborah Tipton
      Black, Inc.
      Lester McKinley
      Georgea Greaves
      Mary Jennings
      Hattie Boone Black Testamentary GST Exempt Trust



**BARBER LAW** FIRM

ATTORNEYS AT LAW

425 West Capitol Avenue
Suite 3400
Little Rock, Arkansas 72201

**P** 501.372.6175
**F** 501.375.2802

www.barberlawfirm.com

**PERRY L. WILSON**
**DIRECT** 501.707.6102
pwilson@barberlawfirm.com

November 17, 2015

**VIA EMAIL: rick@blackincdewitt.com and**
**VIA FACSIMILE: (870) 946-4570**

Mr. Rick Duffield
President
Black, Inc.
508 S. Monroe
DeWitt, Arkansas 72042

**Re:     George H. Dunklin, Jr. Transfer of Shares of Black, Inc.**

Dear Mr. Duffield:

George Dunklin provided me with a copy of the November 9, 2015, letter
that he received from Deborah Tipton's attorney, Charlie Merkel. I see that
Black, Inc. was copied on that letter, so I presume that you received a copy
of the letter as well.

Yesterday, Mr. and Merkel and I discussed his letter and Ms. Tipton's
intentions. Mr. Merkel informed me that Ms. Tipton refuses to elect
between the $20,000,000.00 purchase price offered to Mr. Dunklin by a
third party and the determination of "fair market value" as set forth in the
Stock Repurchase Agreement date December 12, 2000 ("SRA").

Mr. Dunklin's position is that the SRA requires an immediate election of
either the offered purchase price or "fair market value" in order to
effectively exercise available preemptive rights, and Ms. Tipton's refusal to
elect between the offered purchase price and "fair market value" means that
Ms. Tipton has failed to exercise the preemptive rights available to her
under the terms of the SRA.

Ms. Tipton's preemptive rights election period runs through November 26,
2015. Please let me know if the McKinley Shareholders have indicated an
intent to exercise their preemptive rights in the event that Ms. Tipton fails
to effectively exercise her preemptive rights.

Sincerely,

BARBER LAW FIRM PLLC

Perry L. Wilson

PLW/mn

**EXHIBIT**

**D**



**B A R B E R L A W** FIRM

---

ATTORNEYS AT LAW

425 West Capitol Avenue
Suite 3400
Little Rock, Arkansas  72201

P 501.372.6175
F 501.375.2802

www.barberlawfirm.com


**PERRY L. WILSON**
DIRECT 501 707 6102
pwilson@barberlawfirm.com

November 19, 2015


**VIA EMAIL: cmerkel@merkel-cocke.com**

Mr. Charles M. Merkel, Jr.
MERKEL & COCKE, P.A.
30 Delta Avenue
P.O. Box 1388
Clarksdale, MS 38614-1388

**Re:    Black, Inc.**

Dear Charlie:

On the basis of your November 9, 2015, letter to George Dunklin and our telephone conversation of November 16, 2015, it is Mr. Dunklin's position that by failing to elect between the notice purchase price of $20,000,000.00 contained in Mr. Dunklin's October 27, 2015, notice of intent to transfer and the fair market value as defined in the Stock Repurchase Agreement dated December 12, 2000 ("SRA"), Ms. Tipton has not effectively exercised her preemptive rights under the SRA.

Ms. Tipton received her copy of Mr. Dunklin's notice of intent to transfer shares on October 29, 2015.  By my calculation, November 28, 2016, is Ms. Tipton's last day to effectively exercise her preemptive rights under the SRA.


Sincerely,

BARBER LAW FIRM PLLC

Perry L. Wilson

PLW/mn



CHARLES M. MERKEL
JOHN H. COCKE*
CYNTHIA I. MITCHELL
CORRIE J. SCHULER
EDWARD (TED) P. CONNELL, JR.*
CHARLES M. MERKEL III
*ALSO LICENSED IN TN

**MERKEL & COCKE**

A PROFESSIONAL ASSOCIATION

ATTORNEYS AT LAW

30 DELTA AVENUE

POST OFFICE BOX 1388

CLARKSDALE, MISSISSIPPI 38614-1388



662-627-9641
FAX # 662-627-3592
WWW.MERKEL-COCKE.COM

Charles M. Merkel, Jr
cmerkel@merkel-cocke.com

November 19, 2015

Perry L. Wilson, Esquire
BARBER LAW FIRM PLLC
2700 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas 72201

*pwilson@barberlawfirm.com*
*and U.S. Mail*

RE:   George H. Dunklin, Jr. Transfer of Shares of Black, Inc.

Dear Perry:

When you and I talked on Monday, it was my understanding that you were going to get back to me the following day with respect to implementation of the appraisal provisions of the Stock Repurchase Agreement.  Instead, I have now received from Rick Duffield a copy of a letter of November 17, 2015, which was sent to him on behalf of Mr. Dunklin.  Although not the addressee, I am responding on behalf of Deborah Tipton in the unlikely event that anyone should believe that by silence she has agreed with any of the contents of your letter.

The positions stated therein, which I assume are Mr. Dunklin's personal interpretations of a document are patently wrong without any validity or support.

First, Deborah Tipton's election period does not terminate on November 26, 2015.

Paragraph 2.3(a)(i)(ii) provides the timing for the various parties to exercise their respective options to purchase under the agreement.  The terms in summary form are "such shareholder shall first offer to sell all of such shareholders shares or such portion thereof as the case may be as follows: (i) FIRST for a period of SIXTY DAYS of receipt of such notice of intent to sell... lineal descendants ... shall have the option to purchase such shares.  (ii) NEXT for a period of THIRTY DAYS FOLLOWING THE EXPIRATION of the sixty day period set forth in paragraph (i)above, the other Dunklin shareholders shall have the option to purchase any shares not purchased pursuant to paragraph (i) above.

The first sixty day period when added to the next thirty day period results in a total number of ninety days during which Deborah Tipton may exercise her option.  Inasmuch as Mr. Dunklin's notice letter went out on October 27, 2015, and without arguing when it was received, Deborah's window to exercise will not expire before January 25, 2016.

The expiration date, however, is a relatively moot point inasmuch as Ms. Tipton has already exercised her option by letter of November 9, 2015.  Ms. Tipton, pursuant to the provisions of paragraph 2.3(a)(v), has exercised her option to purchase the offered shares for either the purchase price set forth in Mr. Dunklin's notice, if such a price could even be determined, or the fair market value of the shares as of the October 27, 2015, notice date.  The choice may be selected by the

Perry L. Wilson, Esq.
November 19, 2015
Page 2

purchaser.  There is nothing in paragraph 2.3(v) that remotely suggests the purchaser who has the choice would be forced to make such choice without knowledge of the appraised fair market value of the shares.  Mr. Dunklin's Russian Roulette position is not remotely suggested by the agreement and the mere suggestion is absurd.

This brings us to the determination of fair market value.  The methodology for determining "fair market value" is provided in paragraph 1.1(b) in the stock repurchase agreement.  Obviously there will be no mutual agreement as to fair market value, and I assume it is highly unlikely that the parties will be able to jointly select an appraiser.  Accordingly, the agreement controls:

> In the event the selling shareholder and the purchaser do not mutually agree on a single appraiser, the selling shareholder's selected appraiser and the purchaser's selected appraiser shall select a third appraiser to conduct the fair market value determination.

Please provide me no later than the close of business Monday with the name of the appraisal entity which Mr. Dunklin wishes to use for the appointment of a third appraisal entity.  As in any contractual document there is an implied duty of good faith imposed upon the parties thereto to cooperate in implementing the agreement and since you have already raised questions concerning the parties ability to obtain an appraisal in time to close the transaction within 135 days, time is obviously of the essence.  While there may be a need at some point to address the availability of an appraised value of the shares of stock within the period allowed for payment, any deliberate delay by Mr. Dunklin in commencing the appraisal process will obviously nullify the viability of any time arguably specified for payment.

I sincerely hope that this transfer can be accomplished amicably under the clear terms of the agreement, but that is entirely up to Mr. Dunklin.

Awaiting the information concerning Mr. Dunklin's choice of an appraiser to nominate the appraising entity, I remain,

Yours very truly,

MERKEL & COCKE, P.A.

Charles M. Merkel, Jr.

CMM/pcr
cc:     Deborah Tipton
        Rick Duffield, Black, Inc.
        Lester McKinley
        Georgea Greaves
        Mary Jennings
        Hattie Boone Black Testamentary GST Exempt Trust



**BARBERLAWFIRM**

ATTORNEYS AT LAW

*[address and contact details illegible]*

**PERRY L. WILSON**
DIRECT 501 707.6102
pwilson@barberlawfirm.com

November 30, 2015

**VIA EMAIL:** rick@blackincdewitt.com and
**VIA FACSIMILE:** (870) 673-4569

Mr. Rick Duffield
President
Black, Inc.
508 S. Monroe
DeWitt, Arkansas 72042

**Re:     George H. Dunklin, Jr. Transfer of Shares of Black, Inc.**

Dear Mr. Duffield:

George Dunklin's position is that Deborah Tipton's preemptive rights period under the Stock Repurchase Agreement dated December 12, 2000 ("SRA"), expired on November 28, 2015, and that Ms. Tipton did not effectively exercise her preemptive rights to purchase Mr. Dunklin's shares of Black, Inc. during the allowed period.

Mr. Dunklin's position is also that the preemptive rights period of the "McKinley Shareholders", as that term is defined by the SRA, runs from November 29, 2015 to December 28, 2015.

Please let me know if Black, Inc. receives a notice from the McKinley Shareholders of their intent to exercise their preemptive rights under the SRA to purchase Mr. Dunklin's shares of Black, Inc. stock during the above-stated allowed period.

Sincerely,

BARBER LAW FIRM PLLC

Perry L. Wilson

PLW/mn



EXHIBIT
G

**CHARLES M. MERKEL**
**JOHN H. COCKE\***
**CYNTHIA I. MITCHELL**
**CORRIE J. SCHULER**
**EDWARD (TED) P. CONNELL, JR.\***
**CHARLES M. MERKEL III**
\*ALSO LICENSED IN TN

# MERKEL & COCKE

A PROFESSIONAL ASSOCIATION

ATTORNEYS AT LAW

30 DELTA AVENUE

POST OFFICE BOX 1388

CLARKSDALE, MISSISSIPPI 38614-1388



662-627-9641
FAX # 662-627-3592
WWW.MERKEL-COCKE.COM

Charles M. Merkel, Jr
cmerkel@merkel-cocke.com

December 18, 2015

Perry L. Wilson, Esquire
BARBER LAW FIRM PLLC
2700 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas 72201

   RE:  Exercise of Rights to Black, Inc. Stock

Dear Perry:

   I am writing in follow up to our telephone conversation of this morning of December 15, 2015. In response to my direct question as to the effect of George Dunklin's agreement to move forward with appraisal proceedings upon his previously stated positions or interpretations of the Stock Repurchase Agreement's terms, you have advised me that while he is willing to assist in retaining an appraiser to determine the fair market value of the non-voting shares of Black, Inc. stock, he is not willing to waive or concede any of the arguments you had previously advanced on his behalf. Included among the controverted positions concerning the Stock Repurchase Agreement are: (1) George Dunklin's contention that Deborah Tipton had only thirty days in which to exercise her option to purchase his shares of Black, Inc. stock; (2) George Dunklin's position that Deborah's written notice of her exercise of her option to acquire the Black, Inc. shares which are the subject of the Winemiller/Bogard offer does not constitute valid notice of her intent to exercise her option and is accordingly not an effective exercise of her rights or option to purchase under the Stock Repurchase Agreement; and (3) George Dunklin's less well defined position that regardless of what the mutually appointed appraiser might determine to be the fair market value of the non-voting Black, Inc. shares, he is not compelled to sell for that price in the event it is less than $20,000,000.

   In light of your response, it is clear that justiciable issues continue to exist between our clients concerning their respective interpretations of the Stock Repurchase Agreement to which they are both parties. Accordingly, I will be filing a declaratory judgment action for an interpretation of the Stock Repurchase Agreement and for injunctive relief, including a prohibition against George Dunklin attempting to dispose of his stock to any entity other than Deborah Dunklin Tipton, and a mandatory injunction compelling George Dunklin to sell his entire holdings of non-voting Black, Inc. stock to Deborah Dunklin Tipton for either $20,000,000 or the appraised value of such shares as determined by Stout Risius Ross, Inc. With the election of such amounts to be made by her at the conclusion of the formal appraisal.

       Yours very truly,

       MERKEL & COCKE, P.A.

       Charles M. Merkel, Jr.

CMM/dp

**EXHIBIT**

**H**